IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39738

| BRANDON GOULD, | ) | 2013 Unpublished Opinion No. 736 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: October 31, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

Judgment denying petition for post-conviction relief, affirmed.

Deborah Whipple of Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

GUTIERREZ, Chief Judge

Brandon Gould appeals from the judgment denying his petition for post-conviction relief. Specifically, Gould asserts the district court erred by applying incorrect legal standards to evaluate his ineffective assistance of counsel claims and, when evaluated under the correct standard, the district court erred by denying his post-conviction petition. For the reasons that follow, we affirm.

## I.

## FACTS AND PROCEDURE

Following allegations by Gould's seven-year-old daughter that Gould had inappropriate sexual contact with her, a grand jury indicted Gould on one count of lewd conduct with a minor child under sixteen and one count of sexual abuse of a child under the age of sixteen years. At trial, the State largely based its case on the testimony of the daughter, her mother, and case workers who had interviewed the daughter. Defense counsel tried the case on the theory that the

1

accusations were a fabrication by the mother and perpetuated by the daughter. Defense counsel attempted to highlight inconsistencies in the daughter's testimony and also presented witnesses who testified that the mother was known to be a liar, had made prior false allegations of sexual abuse of her two daughters against other individuals, and was hypersensitive about the possibility of sexual abuse of her daughters, overprotecting, and controlling. Defense counsel also moved for a mistrial on the basis that the prosecutor elicited testimony from the mother that misrepresented the state of Gould and the mother's marriage at the time the allegations surfaced. The mother testified that the marriage was fairly stable in that there had been no talk of divorce and that any problems mainly consisted of disagreements about finances. Defense counsel argued that there was evidence of other marital discord, but to introduce such evidence and impeach the mother would be highly prejudicial to Gould. The district court denied the motion. The district court also ruled that it would not limit the State's inquiry into impeachment evidence--if defense counsel chose to introduce it--under Idaho Rule of Evidence 403.

At the close of the trial, the jury found Gould guilty of lewd conduct with a minor under sixteen, Idaho Code § 18-1508, and was unable to reach a unanimous verdict on the second count. Defense counsel made a motion for a new trial pursuant to Idaho Code § 19-2406(5), made on the same basis as the motion for a mistrial previously sought and denied. The district court denied the motion and imposed a unified sentence of ten years, with three years determinate. Gould directly appealed, challenging only his sentence, and this Court affirmed in an unpublished opinion. *Gould v. State*, Docket No. 35797 (Ct. App. Oct. 27, 2009).

Thereafter, Gould timely filed a pro se petition for post-conviction relief. The State filed an answer and a motion for summary dismissal. Gould filed a motion for a stay of proceedings and sought leave to amend his petition, which the district court granted. After Gould filed an addendum to his petition, the State again answered and filed a motion for summary dismissal of the addendum. Gould raised three overarching claims in his petition and addendum: prosecutorial misconduct, ineffective assistance of defense counsel, and ineffective assistance of appellate counsel. In ruling on the motions for summary dismissal, the district court dismissed the claim of prosecutorial misconduct, finding that the claim could and should have been raised on direct appeal, but determined that Gould was entitled to an evidentiary hearing on the two claims of ineffective assistance of counsel.

2

At the evidentiary hearing, Gould presented evidence and argued that defense counsel was ineffective in several ways, including that defense counsel failed to obtain medical records of one of the daughters and failed to obtain records from the Idaho Department of Health and Welfare (IDHW). Gould argued that the medical records were pertinent to bolstering a defense witness's testimony that two years prior to trial, the mother brought the other daughter into the emergency room on suspicion of sexual abuse, which the emergency room physician deemed to be unsubstantiated. The records from the IDHW, Gould argued, would have indicated that the mother applied for state welfare benefits prior to the allegations by the daughter and would support the defense's theory that the accusations were part of some plan by mother to end the marriage rather than the impetus for the divorce. Gould also presented evidence and argued that his appellate counsel was ineffective for failing to appeal the denial of the motion for a mistrial and the district court's ruling that it would not limit the State's inquiry into impeachment evidence under Idaho Rule of Evidence 403. The district court denied the petition, and Gould timely appeals. He asserts the district court erred by applying incorrect legal standards to evaluate his ineffective assistance of counsel claims. Gould further asserts that, when evaluated under the correct standard, the district court erred by denying Gould's post-conviction petition.

## II.

## STANDARD OF REVIEW

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675, 677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

## III.

## ANALYSIS

**A.     Whether the District Court Erred by Applying Incorrect Legal Standards to Evaluate Gould's Ineffective Assistance of Counsel Claims**

It is well-established that in order to succeed on a claim of ineffective assistance of counsel in a post-conviction petition, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceeding would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Gould asserts that the district court erred by applying incorrect legal standards to evaluate his ineffective assistance of counsel claims. Gould argues that the district court did not use an objective standard of reasonableness when determining whether his defense and appellate counsel were deficient and instead focused on whether counsel's performance was "negligent," "fell below the standard of practice and the standard of care," or was "akin to making a mistake that was so fundamental that it was as though Mr. Gould had no attorney at all." Gould contends that the district court's focus on civil standards of negligence, professional malpractice, and professional negligence are inapplicable here and do not reflect the objective standard of reasonableness test contained within the *Strickland* standard. Gould compares the district court's consideration of whether counsel's mistakes were so fundamental as to make it as though Gould did not have counsel at all to the standard in *United States v. Cronic*, 466 U.S. 648, 659 (1984), which allows for a presumption of prejudice in certain cases.

4

The State argues that the district court expressly stated the *Strickland* standard and that Gould's interpretation of the district court's statements in applying that standard are insufficient to show that the district court erred. Further, the State asserts the district court's use of the terms negligence and malpractice relates to the standards of practice among attorneys and is consistent with *Strickland* and the manner in which it has been applied in other cases: prevailing professional norms are used as a comparison to whether defense counsel's performance in a particular case fell below an objective standard of reasonableness.

Following the presentation of evidence and argument from counsel at Gould's hearing, the district court orally ruled on the ineffective assistance of counsel claims:

> *The standard that the court has to apply in making a decision regarding an allegation of ineffective assistance of counsel as a ground for relief is set forth*, as the attorneys well know *in the well known case of Strickland versus Washington*. It's a two-step analysis, and the first is to determine whether or not the trial attorney, and in this case not only the trial attorney but the appellate attorney, were *ineffective in that they failed to provide competent legal counsel* on behalf of their client.
>
> . . . .
>
> What was absent in this trial was evidence that the--evidence even in the form of an expert opinion, for example, that the performance of either of these attorneys, representing Mr. Gould, was negligent or that the services that they provided for Mr. Gould *fell below the standard of practice* and the standard of care for attorneys practicing their respective professions, trial attorney and appellate attorney, in this community during the relevant times.
>
> It's clear that Mr. Gould and his family are disappointed by the decision of the jury. The jury found you, Mr. Gould, guilty beyond a reasonable doubt, and it was *not caused by incompetent representation* by [defense counsel]. It was the jury rejecting the theory of the case.

(Emphasis added.) The district court also addressed the specific issues that Gould raised concerning his defense and appellate counsel, respectively. With regard to defense counsel and his alleged ineffective assistance by failing to obtain certain records, the district court stated the following:

> [T]he question is, whether or not [defense counsel]'s failure to obtain that record [of an emergency room visit] in an attempt to impeach [the mother] was *negligent*, *was akin to making a mistake that was so fundamental that it was as though Mr. Gould had no attorney at all*. And I don't find it to be the case.
>
> . . . I heard argument but no testimony to support such a claim, that it *constituted professional malpractice* for a trial attorney to fail to get his hands on that record.
>
> The other records that were at issue here, for example, the Health & Welfare record that may have supported the theory of the defendant's case that

> [the mother] had applied for some benefits at the Department of Health & Welfare perhaps the day before she made the disclosure, or earlier in the day at least before she made the disclosure, similarly is a--it may have done some good for the defense. It may not have done some good.
>
> But what I didn't hear . . . during this hearing, was evidence that failure to obtain that record in and of itself *constituted professional negligence* and ineffective assistance of counsel.

(Emphasis added.) Because the district court found that defense counsel's performance was not "negligent," it determined that it did not need to "get to the second question of the *Strickland* analysis, . . . whether or not deficient performance of an attorney was prejudicial." The district court summarily addressed the performance of appellate counsel: "Again, there's no evidence in this record that failure to [raise the issues on appeal] constituted deficient performance on the part of appellate counsel. And, again, therefore, we don't get to the second prong of the *Strickland v. Washington* analysis which is whether or not there was any prejudice."

Gould relies on the emphasized language in the district court's oral ruling to argue that the court failed to apply the proper analysis of whether counsel's performance was deficient. The argument is without merit. As noted above, *Strickland* puts forward an objective standard of reasonableness for judging whether errors in an attorney's performance are serious enough to render that performance deficient. *Workman v. State*, 144 Idaho 518, 525, 164 P.3d 798, 805 (2007). Within that standard, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* (quoting *Strickland*, 466 U.S. at 688). Accordingly, a court may reference professional rules of conduct and practice when determining whether counsel's performance was unreasonable. *See, e.g.*, *Missouri v. Frye*, 566 U.S. ___, ____, 132 S. Ct. 1399, 1408 (2012) ("Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides."); *Griffith v. State*, 121 Idaho 371, 373-74 nn.1-3, 825 P.2d 94, 96-97 nn.1-3 (Ct. App. 1992) (referencing the Idaho Rules of Professional Conduct in determining that counsel's performance was not deficient). The same considerations are at play in malpractice and disciplinary actions against criminal defense attorneys. *See, e.g.*, *Idaho State Bar v. Clark*, 153 Idaho 349, 283 P.3d 96 (2012) (determining under the rules of professional conduct whether disciplinary action was warranted against a defense attorney for his representation of a client on a charge of driving under the influence). Deficient performance can also be the basis for a malpractice action. *See Schwartz v. State*, 145 Idaho 186, 191, 177 P.3d 400, 405 (Ct. App.

6

2008) (concluding that a petition for post-conviction relief was untimely and although counsel's failure to take any action on the defendant's behalf may constitute deficient performance, the defendant was left with no remedy other than perhaps an action for malpractice); *Mellinger v. State*, 113 Idaho 31, 35, 740 P.2d 73, 77 (Ct. App. 1987) (J. Burnett, specially concurring) (noting dismissal of a timely-filed petition for post-conviction relief due to ineffective assistance of counsel without a relation-back doctrine would leave a defendant no alternative but to sue the attorney for malpractice). We have also equated the test of whether counsel's performance was outside the wide range of professional norms with the question of whether the defendant received "reasonably competent assistance of counsel." *Laughlin v. State*, 139 Idaho 726, 728, 85 P.3d 1125, 1127 (Ct. App. 2003); *see also Aragon*, 114 Idaho at 761, 760 P.2d at 1177 (noting the right to counsel is the right to "reasonably competent assistance of counsel"). Thus, the district court's considerations of whether Gould's defense counsel failed to provide competent legal counsel, whether his performance fell below the standard of practice, or whether errors constituted professional malpractice or negligence were not improper; nor were those considerations outside the scope of the *Strickland* standard.[1] Moreover, the district court expressly noted the *Strickland* standard encompassing both deficient representation and prejudice, and in the written order following the evidentiary hearing, the district court stated, "The Court finds neither . . . Mr. Gould's trial attorney, nor . . . Mr. Gould's appellate attorney, were deficient in their representation of Mr. Gould."

Gould's argument that the district court applied the standard from *Cronic* is also unavailing. In *Workman*, the Idaho Supreme Court reviewed both the requirements of *Strickland* and *Cronic*. The *Workman* Court noted that *Cronic* allows for a presumption of prejudice on an ineffective assistance of counsel claim when certain circumstances exist, two of which are where there is a complete denial of counsel at a critical stage of trial or where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. *Workman*, 144 Idaho at 525, 164 P.3d at 805. When evidence falls short of establishing such a circumstance, the actions of

---

[1] Although the district court also referenced standards of professional conduct, the court properly applied, referenced, and made its decision based on the *Strickland* standard. To avoid possible confusion in matters where ineffective assistance of counsel is raised, district courts should make clear that they are relying on the standard set forth in *Strickland* and the elements articulated in *Strickland*.

counsel are subject to evaluation under *Strickland*, not *Cronic*. *Workman*, 144 Idaho at 527, 164 P.3d at 807.

Here, the district court's comparison of whether errors by defense counsel were "akin to making a mistake that was so fundamental that it was as though Mr. Gould had no attorney at all," is similar to *Strickland*'s requirement that to prove counsel's performance was deficient, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The line between complete failure of defense counsel addressed in *Cronic* and deficient performance resulting in a lack of counsel addressed in *Strickland* is not a clear one, but in light of the context of the district court's oral ruling and subsequent written order, the district court did not err in applying the proper legal standard.[2]

## B.     Whether the District Court Erred by Finding Counsel's Assistance Was Not Deficient

### 1.     Defense counsel

Gould asserts that his defense counsel's performance was deficient because counsel failed to obtain and examine certain records. In particular, to support the defense's theory that the allegations were false, Gould contends that defense counsel should have obtained medical records showing a past history of sexual abuse allegations of the daughter that the mother made against various individuals, one of which was based on an injury nearly identical to the injury alleged in this case. Additionally, Gould argues that the IDHW records showing that the mother had applied for welfare benefits prior to the accusations against Gould were highly relevant in showing that the mother fabricated the story of abuse.

The State counters that Gould has failed to show why obtaining the medical records was unreasonable in light of the fact that Gould's sister testified in regards to the prior allegations of sexual abuse by the mother. As to the counsel's alleged deficient performance for failing to obtain the IDHW records, the State points to defense counsel's testimony that even had he obtained such records, he may not have introduced them for fear that the mother's need of benefits would elicit sympathy from a jury. In short, the State argues that Gould has not shown

---

[2]     As we noted in our footnote above, district courts hearing an ineffective assistance of counsel claim should be mindful of the language used in *Strickland* and should use the standard established by *Strickland*, unless the circumstances of *Cronic* are involved.

that the failure to obtain the records to support the defense's theory of the case or to impeach the mother constituted deficient performance.

Generally, defense counsel is bound to conduct a prompt and thorough investigation of his or her case. *Murphy v. State*, 143 Idaho 139, 146, 139 P.3d 741, 748 (Ct. App. 2006). Counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. *Estes v. State*, 111 Idaho 430, 434, 725 P.2d 135, 139 (1986). Whether a decision regarding investigation is reasonable is dependent on the circumstances, applying significant deference to the judgment of counsel. *Id.* Moreover, a fair assessment of attorney performance requires a court to evaluate the conduct from counsel's perspective at the time the decision was made in order to avoid the distorting effects of hindsight. *Id.* "It is generally agreed that the decision of what evidence should be introduced at trial is considered strategic or tactical." *Bagshaw v. State*, 142 Idaho 34, 38, 121 P.3d 965, 969 (Ct. App. 2005). Thus, a decision of whether or not to introduce evidence or call a witness is one that this Court will not second guess absent evidence of counsel's inadequate preparation, ignorance of the law, or other shortcomings in preparation for trial that are capable of objective evaluation. *See State v. Payne*, 146 Idaho 548, 563, 199 P.3d 123, 138 (2008).

Gould testified at the evidentiary hearing that both he and his sister spoke with defense counsel about the fact that, a few years before the charges arose against Gould, the mother had taken one of the daughters to the emergency room for examination due to suspicion of sexual abuse by a daycare worker. The daughter's injury at that visit was nearly identical to the injury the daughter, who was the subject of this case, had at the time she made allegations of abuse by Gould. Gould testified that medical records showing the mother's prior concern of sexual abuse, which the emergency room physician deemed to be unsubstantiated, would have been useful impeachment evidence at trial. Gould further testified, however, that he did not ask defense counsel to obtain the medical records. As to the IDHW records, Gould testified that the records would show that the mother applied for benefits the same day accusations were made against Gould. He argued it would have lent credibility to the defense's theory that the mother was planning the accusations against him and made arrangements beforehand to be financially taken care of. Gould did not testify to the precise time when he learned the date that the mother had applied for benefits, but he did know that she was receiving benefits within a week of the accusations and prior to trial.

9

Defense counsel also testified. He was aware of the prior emergency room visit at the time of trial and elicited testimony from Gould's sister that it was in regards to the mother's suspicions of child abuse. Defense counsel also testified that he was able to call a number of witnesses who introduced evidence of both the mother's hypersensitivity to the possibility of sexual abuse of her daughters (including prior accusations against other individuals) and the mother's reputation for being untruthful. In other words, defense counsel was able to impeach some of the mother's testimony through the defense's witnesses. He testified that had he been asked to obtain a medical record, he would have. Defense counsel also testified that in hindsight, the document may have been useful to impeach the mother when, while testifying at trial, she denied that the emergency room visit had anything to do with suspected sexual abuse of her daughter. In regards to the IDHW records, defense counsel testified that they may have been relevant and useful in showing that the mother was planning something in advance, but he also testified that it is common for individuals in the mother's position to seek benefits when accusations arise and he would have hesitated to introduce such evidence in order to avoid making the mother more sympathetic to the jury.

The district court did not err in finding that Gould failed to show that defense counsel's performance was deficient. Defense counsel called both Gould and Gould's sister to testify about the emergency room visit, as well as the mother's propensity for lying. As defense counsel testified, the medical record may have served to bolster the credibility of Gould's sister as a witness, but would not have added anything new to the case. Though in *hindsight* defense counsel admitted it may have been a helpful document to have, at the time, he did not feel it was necessary for the defense. A fair assessment of attorney performance from counsel's perspective at the time shows he was not unprepared or ignorant of relevant information, and we will not second-guess tactical or strategic decisions. Similarly, defense counsel was not deficient in failing to obtain the IDHW records. First, it was unclear at the time of trial when exactly mother applied for the benefits, although defense counsel was aware that she was receiving benefits. Second, it was common for an individual in the mother's circumstance to apply for benefits, and third, defense counsel would not have been likely to introduce such evidence, even if relevant, in order to avoid jury sympathy for the mother. Finally, there is nothing in the evidence that unequivocally shows that the mother applied for benefits *prior* to the accusations by Gould's daughter. The evidence from the IDHW only showed that the application was signed on the date

10

the accusations arose, but the individual from the IDHW who noted that date also stated that he had no personal knowledge of when the mother was at the benefits office.[3] In other words, Gould could only speculate that the application was made prior to the accusations. We decline to find that defense counsel was deficient for failing to obtain speculative evidence that again would have gone to the mother's credibility in maintaining the allegations of abuse and reputation for honesty or lack thereof--issues that defense counsel did, in fact, address through the presentation of witnesses and other evidence. Accordingly, the district court did not error in finding that Gould failed to show that defense counsel rendered ineffective assistance.

### 2. Appellate counsel

Gould asserts his appellate counsel's performance was deficient for failing to raise certain issues on appeal. Appellate counsel only raised the issue of whether Gould's sentence was excessive. Gould argues that appellate counsel's assistance was ineffective because counsel did not raise the denial of the motion for a mistrial, made on the basis of prosecutorial misconduct, or challenge an evidentiary ruling by the district court. He asserts that an appellate counsel is deficient when he or she fails to raise issues that are stronger than those actually appealed.

The State asserts that Gould not only argues the wrong standard in proving deficient performance of appellate counsel, but also failed to present any evidence that appellate counsel erred.[4] Appellate counsel testified that he read the entire record and found no viable issues other than the sentence to raise on appeal. Consequently, the State contends that Gould cannot show that appellate counsel ignored or was aware of relevant issues or erred in failing to raise additional issues on appeal.

We have set forth a clear standard by which to evaluate claims of ineffective assistance of appellate counsel:

> [C]laims that [a defendant] was denied the effective assistance of counsel because appointed counsel should have raised certain additional issues on appeal are subject to the standards set forth in *Strickland*, and [the defendant] therefore must show that appellate counsel's performance was deficient and caused prejudice in

---

[3] Neither party has introduced a copy of the IDHW application for benefits into the record.

[4] At oral argument, the State raised the issue of whether the trial transcript was properly before the district court in the evidentiary hearing and properly before this Court. Having reviewed the record, we are satisfied that the trial transcript was properly before the district court and is properly before this Court.

the outcome of the appeal. An indigent defendant does not have a constitutional right to compel appointed appellate counsel to press all nonfrivolous arguments that the defendant wishes to pursue. Rather, the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being the evidence of incompetence, is the hallmark of effective appellate advocacy. " . . . [I]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

*Mintun v. State*, 144 Idaho 656, 661, 168 P.3d 40, 45 (Ct. App. 2007) (citations omitted). In *Mintun*, this Court also recognized that certain issues should not be addressed in a direct appeal when the record on appeal is not complete enough to appropriately and adequately address the merits of the claim. *Id*. at 662, 168 P.3d at 46. Additionally, a claim of ineffective assistance of appellate counsel for failing to appeal decisions of the defense counsel regarding evidence or other potential errors is difficult to sustain because the record on direct appeal rarely discloses trial strategy and tactical decision-making. *See id.*

Gould testified at the evidentiary hearing that appellate counsel only raised the issue of an excessive sentence, did not speak with Gould until after the opening brief was filed, and failed to file an addendum to raise further issues. Gould testified that appellate counsel should have appealed the denial of the motion for a mistrial on the basis that the prosecutor elicited false testimony from the mother, an error that could only be corrected by the introduction of evidence that would have been highly prejudicial to Gould. The mother testified at Gould's trial that the marriage between her and Gould was relatively stable, she had no thoughts of divorce, and most marital arguments centered on finances. Gould asserts there was other evidence of marital discord, but the evidence would have prejudiced Gould by making the jury believe Gould had sexually deviant tendencies. In particular, Gould had received a sexually-charged text message from a fourteen-year-old girl and had an account with an internet site where individuals could set up casual homosexual connections, both of which his wife knew about. Defense counsel asked the district court to limit the State's inquiry into the highly prejudicial impeachment evidence under Idaho Rule of Evidence 403 if Gould brought in the evidence to the impeach the mother. The district court denied the motion. At the close of trial, defense counsel made a motion for a new trial, on the same basis as the motion for a mistrial and the district court's evidentiary ruling, which was also denied.

Appellate counsel, in his testimony, stated that he read the entire trial record and transcripts and found no error in the district court's rulings on either the motion for mistrial or in ruling on the impeachment evidence under Rule 403. Appellate counsel believed that the district court crafted the appropriate remedy in that the defense was free to cross-examine the mother about her testimony on the status of the marriage, but in doing so would open the door to evidence that may have been prejudicial to Gould. He further testified that in deciding which issues to appeal, he first looks for possible error by the district court and then argues that error on appeal, but having found no error in how the district court ruled, in his professional judgment, the motion for mistrial was not an issue to raise on appeal.

Gould has failed to show that appellate counsel was deficient for failing to raise the denial of the motion for a mistrial or the evidentiary ruling on appeal. While these may have been nonfrivolous arguments to make, appellate counsel is not required to raise all nonfrivolous arguments that the defendant wishes to pursue. Gould's appellate counsel had been representing clients on appeal for several years, and in his judgment, there was no error by the district court in the court's decisions regarding those issues. Appellate counsel raised the issue of an excessive sentence because, as he testified, a defendant can always argue that the district court abused its sentencing discretion. There is no evidence that appellate counsel's performance fell below an objective standard of reasonableness, and therefore, the district court did not err in determining that Gould failed to show that appellate counsel was deficient.

## IV.

## CONCLUSION

We conclude the district court did not err in applying the legal standard for ineffective assistance of counsel claims. We further conclude that the district court did not err in finding that Gould failed to show deficient performance by either defense or appellate counsel. Therefore, we affirm the judgment denying Gould's petition for post-conviction relief.

Judge GRATTON and Judge MELANSON **CONCUR.**